All right, now we can proceed. We're getting a little background noise from someone, so if you're not speaking, please mute your microphone. Mr. Gow, we'll hear from you first. Thank you, your honor. May it please the court, I represent John Bennett. When a U.S. attorney makes a promise that induces a defendant to plead guilty, that promise has got to be fulfilled. There really aren't any exceptions to that rule because of what's at stake. Plead proceeding safeguards must be in place to ensure the defendant receives due process, to maintain a good reputation of the courts and the judicial system, to burnish the reputation of the U.S. attorney's office, and as true now as it was in 1971, to encourage agreements so that not criminal charge is subjected to a full-scale trial. In fact, here a full-scale trial was at stake in John Bennett's case. His case had been pending for about two years, in part because of the pandemic, and about a week before the trial came, the case was settled. John Bennett agreed to plead guilty to possessing his mother's legally owned firearm, which had been stored in a little under the driver's seat of the car that John had been driving. The problem for John is that at the time of sentencing, the promise which induced him to plead guilty went unfulfilled. That promise, a joint recommendation for 12 months and a day. He was sentenced to 24 months. The U.S. attorney did not make a sentencing recommendation in this case, and his failure, that error was compounded by comments undermining defense counsel's argument in support of the recommendation, referring to an aggravating factor. Counsel, don't you think the district court knew that the government had entered into a plea agreement and was making the 12 months and one day recommendation? I mean, my review of the record suggests the court was well aware of that. It is certainly true that the court was aware of what was written in the plea agreement. That is definitely true. However... Which included the government's promise to seek that, right? And then the court expressed some discomfort with that and talked to counsel for the government on two occasions about it, but then maybe you could phrase it as a lukewarm or hedging sort of comments by the prosecutor's office, but there was no doubt in my mind the court knew what the government's opening position was. Your honor, with respect, we certainly believe the district court was aware of what the plea agreement specified as far as what the party's recommendation was, but the promise went on from unfulfilled because in fact the U.S. attorney never made the recommendation in the sentencing portion. If the U.S. attorney had said, your honor, the plea agreement obligates me to recommend 12 months and one day and that was it, that would be sufficient for you? Under the case law, that would constitute a performance of that promise. You do have to add, for instance, the case that we mentioned in the reply brief goes into looking at the entire conduct of the government in the plea and sentencing with respect to comments made and things. There's a lot of back and forth about figuring out just are they giving a wink to the judge about, hey, don't really accept what we're recommending or are they being forthright with respect to the promise made. In this instance, though, not only do we have an instance where there was not a promise uttered, sorry, there was not a recommendation actually uttered in the sentencing hearing, but we have additional conduct. Before you move on to the additional conduct, Mr. Gow, can I ask you a question about your first point of the violation? What importance is it that in your plea agreement, it said that the parties are making this recommendation, whereas I think in some other cases, the language is that the parties will make that recommendation. Is that a distinction that makes what the, at least as in terms of the obligation of whether to say anything on the recommendation, does that matter? In this case, it still is speaking of future conduct. The plea agreement is drafted and executed before the plea, and then after the plea is entered, and then we proceed to sentencing. The plea agreement are making, the parties are making a recommendation precedes the plea. The only part of that paragraph that speaks to the future, not the only part, but the main part is conditioning that agreement on the defendant's condition. So the present sense of that is an incorrect interpretation. It's speaking of future conduct. I don't know. Just to push back a little bit on that, it seems to me that that document, if accepted, remains in the present tense. We are making, and so once it gets to the court, the court reads it and says, that's part of the record at sentencing, and that's what you're still, it's kind of a permanent, it's almost like a perpetual present tense. I understand where you're coming from here. I would say that I still view this because it's in the same paragraph describing the obligation of the defendant to plead guilty in the future in order to enjoy the recommendation that comes thereafter, that I think the correct interpretation under contract law is to interpret this as a future obligation. Remembering, again, if there is an ambiguity, it has to be interpreted in favor of the government. But to get more to the point, of course, is this isn't just a disagreement about whether the U.S. attorney performed or not on actually uttering the words. This is the additional conduct that occurred after that that we have to interpret as well, looking at it holistically. We have a situation where it's only two pages in the transcript, pages 34 and 38, where he actually speaks. In those pages, the first thing he does, I speak for a little bit about some of the 18 U.S.C. 3553A factors, and then he says, not to denigrate this counsel, but you should really listen to this other defense counsel. With respect, that to me, I'm hearing that that's essentially to say, don't pay attention to what this attorney said. You should listen to this other attorney. That's to minimize the argument made and to detract from the joint recommendation. I would say, too, that though he said that he encouraged defense counsel, my co-counsel, to wax eloquently, certainly those notes aren't part of the plea agreement, something that Mr. Bennett bargained for. Then he gets to the phrase, so I would defer to the court's judgment on the range in accepting a 12-month recommendation. That's to disavow a recommendation. That's not to make a recommendation at all. That's to say to the court, we defer to your judgment on the sentence. The 12-year, one-month sentence is always in front of the court. Of course, the court has the entire range of punishment to consider that Congress authorizes. It doesn't need the prosecutor to remind the judge of his job. So that language there does not perform and, in fact, pulls away from what the agreement was. Doesn't the agreement also say that the court is not bound? The parties understand that the court is neither a party to nor bound by the recommendations. Couldn't you view the statement that we defer to the court on whether to accept the recommendation as consistent with a plea agreement that's non-binding? It is recognizing, I think, that there was this document that it's the plea agreement, but I think the better view is to see this as, look, this is the U.S. attorney taking a step back and saying, look, we're just going to defer to you, judge, in whatever you want to do. I think that is the language or the import that's communicated here. I'm a little surprised that counsel, I appreciate you're showing up today since you were there, but I'm a little surprised that counsel didn't say, instead of taking an appeal later, just stay at the time. Judge, I'd just like to confirm with Mr. Meehan here that he joins in recommending 12 months and a day. That might have been more perhaps that would have been a good thing to do, but I think it's a circumstance where Mr. Meehan, the U.S. attorney in this case, had the judge listen to counsel about the negotiations and I just need to get at this point, too, because I think it's really important. He referenced the proof problems, Judge Clark did, the problems of evidentiary proof and the U.S. attorney relied on defense counsel to make the presentation of why there might be evidentiary proof problems, but then when it was his turn to speak again about the issue, not only did he back away, he said, I'm not going to argue for acquittal. So it's a circumstance where there's a clear performance problem here. And on rebuttal, I'd like to address the outcome determined to bear, if I may. Thank you. Well, rebuttal is only proper insofar as it rebuts what the government argues in its argument. So if you haven't brought up the point yet. Well, then, if I may, Judge, just to address that, if you look at Judge Clark's ruling backing up the sentence, nothing is mentioned about the discussion about the proof. Nothing is mentioned about a joint recommendation. The sentence is double what was received. So to me, considering the attention that Judge Clark himself focused on the reason for a joint recommendation and then doesn't cite that and the reasons for the sentence, that shows to me that backing away, that disavowing the agreement made the difference. And that's why it affected the outcome. Thank you. All right. Very well. Thank you for your argument. Mr. DeBray, we'll hear from you. Thank you, Your Honor. Good afternoon. May it please the court. I'm Anthony DeBray for the United States. I'm asking the court to affirm the sentence entered by the district court. Today, I'll be arguing that Mr. Bennett's claim fails all three prongs of the plain error test. And I'll start by addressing prong three, under which the appellant must demonstrate the meaning the error affected the outcome of the district court proceedings by showing a reasonable probability the district court would have imposed a lesser sentence in the absence of the alleged breach. Now, when evaluating this prong, the Eighth Circuit looks at the record as a whole, including the district court statements during and after sentencing. And based on the record before us, there's absolutely no indication, let alone a reasonable probability, that the district court would have imposed a sentence less than 24 months if the prosecutor had acted any differently. In fact, I think it's clear from the record that even if the prosecutor had argued more forcefully for the joint recommendation or repeated some of the same arguments that Mr. Bennett's attorney had made moments earlier in the hearing, it still would not have changed the outcome. And I say that for three main reasons. Number one, the district court was already expressing doubt about the appropriateness of the joint recommendation before the prosecutor spoke, and then continued to express skepticism throughout the sentencing hearings. Number two, the district court also discussed in detail the many factors that went into its thorough sentencing decision, including, for example, Mr. Bennett's background and family characteristics, Mr. Bennett's extensive criminal history for weapons charges, assaults, resisting arrest, and violating bond. The timing of this particular offense occurring only a few months after Mr. Bennett had completed supervised release for a prior conviction on the same charge, for which he received 27 months sentence. And also, Mr. Bennett's own statement disagreeing with the laws prohibiting his possession of a firearm. All of which led the district court to The district court did express a lot of those concerns, which could certainly influence and did influence his decision on the sentence. But maybe in a way, it sort of highlights what the defendant is saying here, which is, it seemed to be litigative risk that drove in large part, from what I understand, the plea agreement here. And it seems to me that it's one thing for the defense attorney to say there's litigative risk for the government. But it's another thing altogether for the prosecutor to stand up and say, when asked by the district court, not necessarily just sort of offering up, but the district court says, why are you doing this? And if the prosecutor doesn't explain that aspect of it, litigative risk, then all the district court has is the rest of it. So why isn't that at least in violation of the spirit of this agreement? And if the defendant wants to hear from you, why did you enter this agreement? Because I got some questions about it. Well, I think it's important to note that the very, almost the very first words coming out of the prosecutor's mouth were, quote, I don't denigrate anything the counsel had just said in terms of favoring the joint recommendation. So by the prosecutor making that statement, I don't denigrate anything that was just said. He was explicitly confirming that the parties were on a unified front and were taking a unified position as to the joint recommendation. The prosecutor then explicitly acknowledged the 12-month recommendation and acknowledged the plea agreement and then stood by it in the face of the deferred to the defense attorney in part because he couldn't really remember why they had reached the agreement. Well, he really deferred, he really asked for Ms. Dragon to speak rather than Mr. Gow because much of the negotiations were between him and Ms. Dragon. But I think to answer your question, the prosecutor was somewhat reluctant to discuss the proof issues himself so that he wouldn't undercut the plea that was just made moments earlier in the plea hearing because this was a combined plea and sentencing hearing. And he also didn't want to undermine his own case as to the issue of guilt. So in this context, it did make more sense rather than him arguing against himself to have Ms. Dragon speak and discuss kind of all of these proof issues. And so Ms. Dragon did just that and brought up all of these proof issues. But had the prosecutor not asked Ms. Dragon to speak, none of those proof issues would have been presented to the court in the first place. So by raising those proof issues, that was yet another... Well, wait a minute. You're presuming that the defense attorney, Ms. Dragon, wouldn't have win. I'm presuming the district court would have asked her the same question that he asked the prosecutor about the agreement. So you're saying that had the prosecutor not said, Ms. Dragon, that information wouldn't have come out. Is that your position? Well, Mr. Gow didn't mention any of those proof issues that came about prior to the prosecutor speaking. So it was the prosecutor who first raised those proof issues in the first instance and then said, let Ms. Dragon speak as to those issues. Getting back to that third prong of the plenary review analysis, my third main point, which I was arguing that it would not have changed the outcome regardless of what the prosecutor had done or said differently. My third point was going to be when the district court denied Mr. Bennett's motion for release pending appeal, it stated, quote, the court can say with certainty that it would have imposed the 24-month sentence regardless of whether the AUSA may or could have advocated more vigorously for the joint recommendation, end quote. But as a result, based on all of these facts, Mr. Bennett cannot show that the alleged breach affected his substantial rights and therefore his claim fails under prong three of the plenary test. Moving towards the first two prongs of the plenary test, as to prong one, there was no error because the United States did not breach the plea agreement. So no error occurred. And even if there was a breach, it was not clear or obvious under prong two. With regards to prong one, the US Supreme Court made clear in the Benchamol case that a prosecutor has no legal duty to argue enthusiastically for a joint sentencing recommendation, absent some express language in the plea agreement requiring the government to do so. Here, as I believe it was Judge Kelly who pointed out, the parties agreed to in the plea agreement, quote, the parties are making a non-binding recommendation of 12 months and a day in or to actively recommend or to expressly recommend. Those are all adjectives that appear in Mr. Bennett's briefing, but don't actually appear in the language of the plea agreement itself. So here, the language of the plea agreement didn't require the government to make any affirmative statements or to argue enthusiastically in favor of the joint recommendation. And here, it's Mr. Bennett who's essentially asking the court to rewrite or expand the plea to add these additional duties on the government, which it cannot do. The Benchamol case also illustrates that a single remark by a prosecutor agreeing with the defense counsel can be sufficient to constitute a recommendation required under the plea agreement. And the 8th Circuit case of Zerhide found that there's no duty that exists to zealously defend a joint recommendation in the face of the district court's hostility at sentencing. So here, the government did satisfy its obligation by signing the plea agreement and sending it to the court, as one of the judges noted earlier, then indicating right off the bat, I don't denigrate anything that was said, confirming the parties were taking a unified position, acknowledging the 12-month recommendation, standing by the plea agreement, raising these other issues of proof that we've discussed. And finally, which we haven't yet mentioned, the prosecutor never discussed Mr. Bennett's lengthy criminal history and never mentioned or advocated for a sentence longer than 12 months. So therefore, no breach of the plea agreement occurred and there was no error under prong one. And finally, even if there's actions all short of clearly or obviously breaching the plea agreement, because the prosecutor never said anything that was false, misleading, or that directly contradicted the language and the terms of the plea agreement. At worst, his statements were subject to reasonable dispute under pucket as to whether they breached the plea agreement and therefore cannot consider clear or obvious error under prong two. So for all of those reasons, Mr. Bennett's claim fails all three prongs of the test. I see that I only have a few more seconds, unless there's any additional questions. Hearing none, I would ask for the court to affirm Mr. Bennett's sentence. Thank you for your time. All right. Thank you for your argument. Just so you know, we were getting some interruption in your video feed during the argument. It was pausing occasionally. We heard everything, but you might want to check into your bandwidth and so forth if you have future court proceedings, just to make sure it's functioning as you would like it. Mr. Gao, I apologize. Well, you're doing the best you can. And as I say, we heard everything, but I just wanted to alert you to that in case you have an IT guy who should take a look. Mr. Gao, I think you used all of your time. You have something you're dying to say? I'll give you one minute. We'll give you one minute for a rebuttal. Thank you, Your Honor. Just so you know. I'll just note this, Judge. Thank you. With respect to Benchimol, it does stand for the enthusiasm proposition. The appellate court grafted on it an enthusiasm clause to the plea agreement. The Supreme Court said no. But the Supreme Court also said it's improper to inject material reservations about the agreement to which the government committed itself. And there were material reservations here, as we've discussed. So that's what I would add. Judge, for those reasons, Your Honor, we're asking that the sentence be vacated and the case be remanded for resentencing. Thank you. Okay. Thank you for that. Just so you know, in the future, the clock includes your rebuttal time. So if it goes down to zero on your opening argument, then you've used up all your rebuttal time. But I'm happy to have heard that last thought and we appreciate the argument from both counsel. The case is submitted and the court will file a decision in due course.